# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**PRESTRESS SERVICES INDUSTRIES OF TN, LLC**                **PLAINTIFF**

**V.**                               **CIVIL ACTION NO. 3:15-CV-080-MPM-RDP**

**W. G. YATES & SONS CONSTRUCTION
COMPANY; OLE MISS ATHLETICS FOUNDATION;
AECOM DESIGN, A PROFESSIONAL CORPORATION;
AND HOCH ASSOCIATES P.C.**                             **DEFENDANTS**

**HOCH ASSOCIATES P.C.**                       **THIRD PARTY PLAINTIFF**

**V.**

**NANGIA ENGINEERING OF TEXAS, LTD.**     **THIRD PARTY DEFENDANT**

### ORDER

This cause comes before the court on its own motion, setting a hearing for January 29-30, 2018, at which it will give the parties an opportunity to submit arguments regarding any unresolved issues in this case. In reviewing the current status of this case, it has become apparent that there remain an unusually large number of unsettled issues between the parties, some of which appear to have only recently been recognized as matters in dispute. This seems to be partly the result of misunderstandings between the parties, and it also appears that, in the course of making numerous attempts to settle this case, its actual litigation has suffered. In entering the present order, this court is not attempting to prejudge these remaining issues, but it will make some observations on them, in order to hopefully streamline the presentation of arguments and

proof at the hearing.

**1. Status of the breach of contract claim assigned by PSI to Hoch**

Yates has filed a motion *in limine* seeking a ruling clarifying that this court's prior dismissal of the design defect claims against Hoch on the minimum clearance issue does not include PSI's assigned breach of contract claim against Hoch. In seeking to recover against Hoch for the minimum clearance design issue, Yates has relied on two claims: 1) that Hoch committed its own acts of negligent design *vis a vis* the minimum clearance design issue and 2) that Hoch failed to warn of AECOM's negligence in this regard. This court previously granted Hoch's motion for summary judgment with regard to the first allegation, finding that Yates' complaint failed to state a design defect claim against Hoch on the minimum clearance issue. In its motion *in limine*, Yates has requested that this court clarify that its ruling did not apply to the breach of contract claim originally asserted by PSI against Hoch, which has since been assigned to Yates.

In considering this motion, this court's first impression is that it relies upon arguments which Yates did not submit initially to this court. In its prior order, this court addressed the pleading arguments which Yates actually made to it, writing that:

> In its brief, Yates also cites a portion of PSI's complaint detailing its claim against Hoch, which have been assigned to Yates. However, that portion of the complaint merely alleges that:
> > 125. Hoch owed PSI a duty of care with respect to Hoch's engineering work for the Project.
> > 126. Hoch breached that duty by, among other things, negligently performing engineering and design work such that, among other things, the design for the Project did not comply with the applicable seismic code.

> 127. As a direct and proximate result of Hoch's negligent breaches of the duty of care it owed to PSI, PSI has incurred damages and demands judgment in an amount in excess of $75,000, plus pre- and post-judgment interest, costs, reasonable attorney's fees, and any other relief this Court deems just.
>
> It is thus plain that paragraph 126 makes reference to design errors made by Hoch with regard to the *seismic code* issue, and, as noted previously, defendant does not appear to dispute that it made errors in that regard (though it does deny that these errors delayed the project).

[Slip op. at 11-12].

Thus, in its prior briefing, Yates relied upon paragraphs 125-127 of PSI's complaint, and those were the paragraphs which this court addressed in its order. In its motion *in limine*, however, Yates cites different portions of PSI's complaint, namely paragraphs 110-112, which state as follows:

> In its Amended Complaint [Doc. # 28] PSI alleged against Hoch under COUNT FOUR – BREACH OF CONTRACT the following:
> 110. PSI restates the preceding allegations as if fully rewritten herein.
> 111. PSI fully performed its obligations under the PSI-Hoch Contract.
> 112. Hoch breached the PSI-Hoch Contract by, among other things, failing to meet the standard of care with respect to its design work.

[Motion in limine at 3]. In the court's view, it would have been preferable for Yates to cite this portion of PSI's complaint initially, if it believes that its language better supports its arguments.

It is true that paragraph 112 does not share the defect in paragraph 126 of PSI's complaint, which made reference to the seismic standards issue, with no mention of the minimum clearance issue. Still, paragraph 112 shares the same vagueness defect which is present in the previously-discussed portions of the complaint, giving Hoch no indication exactly what it may have done in "failing to meet the standard of care with respect to its design work." Hoch argues that, given the prior dealings between itself and PSI, and considering the language

3

of paragraph 126, it had every reason to think that the allegation that it did not meet its standard of care related to the *seismic standards* issue. As discussed below, this court is inclined to agree with Hoch's argument, but it will wait until the January 29 hearing to make an actual ruling in this regard.

This court does agree with Yates' argument that the status of PSI's assigned claims remains unresolved, since a fair reading of Hoch's motion for summary judgment is that it sought dismissal of Yates' own claims, and not those assigned by PSI. This court believes that Yates shares responsibility for the confusion in this regard since, in responding to Hoch's motion, it chose to cite a portion of PSI's complaint, albeit not the one it relies upon today. Regardless, this court is less interested in assigning blame for the current confusion than in resolving it. It will hopefully be able to do so at the January 29 hearing.

In addressing this issue at the hearing, Yates will first need to assuage this court's doubts regarding the basic fairness of allowing minimum clearance design claims against Hoch to go to trial when none of the complaints indicated that this was an allegation against Hoch. In its brief opposing the motion *in limine*, Hoch writes that:

> The allegations of these paragraphs are just as "vague" and "plainly insufficient" as those Yates relied upon in its initial briefing. A claim under Rule 8(a) must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* These paragraphs simply cannot be read to state a claim based on the minimum clearance issue, especially when read in conjunction with PSI's meritorious claim that Hoch's design failed to meet the seismic code.

[Hoch brief at 7-8].

4

This court is inclined to agree with this argument and conclude that PSI's assigned breach of contract claim against Hoch relates solely to the seismic standard issue, for essentially the same reasons which this court gave in its prior summary judgment order. As this court noted in that order:

> The present motion for summary judgment is concerned with Hoch's potential liability for the minimum clearance design issue, not with the seismic code issue. While the above-quoted language of the complaint does include rather standard language asserting that Hoch's design errors included the seismic issue "among other things," this vague language is plainly insufficient to allow Yates to inject a completely new design defect claim which was otherwise not asserted in the complaint. In so stating, this court notes that a design defect claim of this nature is inevitably a highly complex matter, which would almost certainly have required Hoch to consult with expert witnesses and conduct extensive discovery. It would go against all considerations of fairness and the Federal Rules of Civil Procedure to allow Hoch to assert a new claim of this magnitude after the close of discovery and after the deadline for designating expert witnesses has passed. Allowing such a design defect claim would be even more unfair in this case, considering that AECOM has already paid a very large amount to settle a claim based on a complaint which alleged that it, and not Hoch, had committed a "massive design error." It seems likely to this court that AECOM might not have been willing to pay as much to settle this claim if the complaint alleged that Hoch shared in the liability for minimum clearance design errors.

[Slip op. at 11]. These conclusions appear to apply equally to the vague language in paragraph 112 of PSI's complaint.

In the court's view, the pleadings and factual history of this case gave Hoch every reason to believe that it would have to answer for 1) its admitted failures on the seismic standards issue and 2) for failing to warn of the defects in AECOM's design on the minimum clearance issue. These were the only two claims which were clearly asserted in the complaints filed by Yates and PSI. Certainly, there was nothing preventing Yates from amending its complaint to allege that Hoch itself committed design errors with regard to the minimum clearance issue, but the fact

5

remains that it did not do so.

Considering the vagueness of the pleadings, it is unnecessary to discuss the weaknesses in Yates' expert testimony in this context. Clearly, opinions stated by an expert are no substitute for the requirement that a litigant clearly state the nature of his claims in the complaint. This court notes parenthetically, however, that what Yates seems to regard as its strongest expert testimony against Hoch, set forth in section 2.2.2 of the report of its expert Carasquillo, is actually entitled "Prestress Services Industries, LLC." That section of the report proceeds to make certain allegations against PSI, some of which do appear to relate to the minimum clearance issue. Yates further emphasizes that, buried within a prior portion of Carasquillo's lengthy report, several pages before section 2.2.2, is an assertion that "[t]he precast members of the facility were designed by Hoch on behalf of PSI but, for the purposes of this report, Hoch and PSI will be jointly referenced as PSI."

This court understands Yates' argument that, if one reads every sentence of Carasquillo's lengthy report, then he will understand that section 2.2.2, while entitled "Prestress Services Industries, LLC" actually refers to Hoch as well. This court can discern an extreme potential for confusion in this regard, however, and it is unclear why a litigant in Hoch's position would have even paid particular attention to this section of Carasquillo's report. Once again, the complaints, as well as the prior dealings among the parties, gave Hoch every reason to think that the seismic standards and failure to warn issues were the ones for which it would have to answer in this case. As such, this court can easily see a litigant in Hoch's position failing to recognize that Yates was making allegations that it committed design errors with regard to the minimum clearance issue, and it appears that such confusion actually occurred.

6

If Yates believed that the views of its expert Carasquillo gave it cause to assert a design defect claim against Hoch based on the minimum clearance issue, then it should have amended its complaint to do so. Instead, Yates continued to proceed under a complaint which alleged that:

> 376. While AECOM is primarily responsible for the Minimum Design Clearance Bust (Paras. 256-274), Hoch was negligent in not warning of this clearance problem prior to shipment and installation of precast and concrete elements which, Hoch knew or should have known, could not be constructed with normal and allowance tolerances and still meet IBC clear height requirements.

In the court's view, the language of this complaint would lead any reasonable litigant in Hoch's position to believe that its only potential liability with regard to the minimum clearance issue involves failure to warn allegations. The fact that this language did, in fact, lead Hoch to believe this can be seen from the fact that, in its motion for summary judgment, it only sought dismissal of Yates' *failure to warn* claim on the minimum clearance design issue.

In ruling on the basis of a pleading deficiency, this court notes that it is ordinarily not a "stickler" for such matters, and it is frequently willing to excuse vague language in complaints if it believes that the defendant was otherwise provided with fair notice. In this case, however, the circumstances gave rise to a high risk of confusion on the part of Hoch which would, inevitably, greatly prejudice its ability to prepare a defense. Based upon the arguments which were made (and not made) by Hoch in its summary judgment motions, it appears that such confusion was not only possible, but that it actually occurred. That being the case, this court is disinclined to excuse the deficiencies in the complaints in this case, as it relates to the minimum clearance issue.

Allegations in a case are not puzzles to be solved by the opposing party; rather, they are something which must be set forth plainly in the complaint. This court understands that there is

7

at least an argument that a litigant in Hoch's position could have correctly "solved" the puzzle by referring to the aforementioned sections in Carasquillo's report, thereby discerning that this expert maintained that Hoch had done something wrong with regard to the minimum clearance issue.  However, all indications are that Hoch did not, in fact, solve this puzzle correctly and that, as a result, it lost the opportunity to seek summary judgment on any such minimum clearance claims and to otherwise prepare a defense to them.

Given the complete absence of any allegations on this issue in the complaints, and considering the confusing nature of Carasquillo's report, it strikes this court as completely understandable that Hoch was confused regarding what was alleged against it.  Therefore, this court is confronted with a pleading defect which is not merely a technical one, but which, by all appearances, actually failed to give Hoch an opportunity to prepare a defense.  In light of the foregoing, this court is unlikely to excuse the vagueness of paragraph 112 of PSI's complaint on this issue, any more than it was willing to excuse the defects in the previously-discussed portions of the complaints.  Having said that, this court does agree with Yates' argument that the status of PSI's assigned claim was not specifically resolved by its prior summary judgment order, and its motion *in limine* seeking a clarification in this regard will therefore be granted.  Nevertheless, it seems likely that, at the January 29 hearing, this court will decide that, to the extent any breach of contract claims assigned by PSI to Yates remain relevant in this case, they relate only to the seismic standards issue and not to the minimum clearance issue.  However, this court will give Yates an opportunity to persuade it otherwise at the hearing, and it will now turn to a second issue which it intends to address at the hearing.

**2. The status of Yates' failure to warn claim**

In its prior order, this court denied Hoch's motion for summary judgment based on Yates' claim that Hoch had failed to warn of AECOM's mistakes *vis a vis* the minimum clearance design issue. In so concluding, this court emphasized that Hoch had failed to rebut Yates' reliance on *George B. Gilmore Company v. Garrett*, 582 So. 2d 387, 396 (Miss. 1991), writing that:

> Thus, Yates relies upon the Mississippi Supreme Court's decision in *Garrett* in support of its argument that Hoch had a common law duty to warn of defects in the minimum clearance design, even if it did not commit those defects itself. Importantly, Hoch fails to even address the *Garrett* decision in its twenty page reply brief, which is almost entirely devoted to Hoch's design defect claim. In the court's view, *Garrett* does at least arguably appear to support Yates' argument in this context, since the contractor in that case was certainly not at fault for the presence of Yazoo Clay deposits below the house. Nevertheless, the Mississippi Supreme Court concluded that it faced potential liability for failure to warn, since it failed to take steps to test the soil to ascertain whether there might be a problem.
>
> In its summary judgment brief, Hoch argues that the existence of a contractor's duty to warn was something Yates was required to prove with expert testimony and that it has failed to present such testimony in this case. In relying upon *Garrett*, however, Yates' contention is that the Mississippi Supreme Court has itself established the existence of such a duty as a matter of Mississippi law and that the question is simply whether Hoch breached that duty in this case. Once again, Hoch has not attempted to rebut this argument.

[slip op. at 7-8].

Given Hoch's lack of arguments on this issue, this court believed that it had insufficient basis upon which to distinguish *Garrett* from this case. Given that this court has allowed Yates to make arguments in its motion *in limine* which it failed to assert in its original briefing, it will give the same courtesy to Hoch and allow it (and Yates as well) to submit any authority which

9

they might have in this context.  This authority should be set forth in trial briefing filed no later than a week before the hearing, and it will hopefully include precedent which (unlike *Garrett*) involved a subcontractor's duty to warn of the general contractor's or architect's mistake.

At this juncture, this court remains reasonably confident that a subcontractor may, at least in certain circumstances, have a duty to speak up if it knows, or should know, of a mistake in the general contractor's or architect's design.  To use an extreme hypothetical, if an engineer working on a project realizes that the building as designed by the architect would collapse, can it seriously be argued that he has no duty to speak up?  This court certainly does not think so. Having said that, this court can discern many unsettled issues in this context, such as exactly how obvious any such defects would have to be to give rise to liability for failure to warn.  Indeed, it is at least arguable that an engineer in Hoch's position should be able to operate under a basic assumption that an architect in AECOM's position is reasonably competent, and this court's understanding is that Hoch's basic task was not to review AECOM's work as much as do its own work on the project.   If the parties have any evidence to the contrary, they may present it at the hearing.

This court previously expressed an intent to decide this issue at the directed verdict stage, but, since it has determined to hold hearings in this case, it seems appropriate to entertain arguments, and potentially testimony, on the issue at that hearing.  In its prior ruling denying summary judgment, this court noted that it had concerns regarding the expert testimony offered by Yates on the failure to warn issue.  Specifically, this court wrote that:

> At the same time, this court acknowledges that Hoch's initial brief on the failure to warn issue pointed out arguable weaknesses in Yates' proof regarding whether Hoch breached its duty to warn of defects in AECOM's design.  While

> this court does not regard Hoch's arguments in this context as sufficiently compelling to grant summary judgment on the failure to warn issue, it will carefully consider the sufficiency of proof presented at trial in deciding whether a directed verdict should be granted on this issue. In particular, this court will be interested to see at trial what proof Yates has that a reasonably competent engineer in Hoch's position should have been aware of potential problems involving the minimum clearance design issue. This court will also be interested in how obvious any defects in AECOM's design might have been, partly to assist in determining whether any deficiencies in Yates' expert testimony on this issue should be excused.

[Slip op. at 8-9]

In its response to Hoch's motion for summary judgment, Yates was unable to specify any opinions offered by its expert Carasquillo (or any other expert) regarding the failure to warn issue. Yates did cite the *Garrett* decision in support of the proposition that a duty to warn may exist, but that does not resolve the issue of *breach* of duty. This court believes that expert testimony is, in fact, required on the breach of duty issue, unless it can be said that the issues surrounding Hoch's liability for failure to warn are sufficiently easy to understand that no expert testimony is required. Indeed, in *Hubbard v. Wansley*, 954 So. 2d 951, 960-961 (Miss. 2007), the Mississippi Supreme Court wrote that "where a layman [juror] can observe and understand the negligence as a matter of common sense and practical experience expert testimony is not necessary." Thus, it is the defendant's *negligence* which must be a matter of common experience, and not merely the facts surrounding that alleged negligence.

This court's understanding of Yates' position is that it essentially concedes that it offered no expert testimony on the failure to warn issue but that it maintains, based on *Hubbard*, that it is sufficiently easy for a jury to understand Hoch's alleged negligence even without such testimony. In allowing Yates' failure to warn claim to go to trial, this court was primarily motivated by

uncertainty regarding whether the claim did, in fact, involve "obvious" negligence so as to excuse a lack of expert testimony. In this vein, this court wrote that it was "interested in how obvious any defects in AECOM's design might have been, partly to assist in determining whether any deficiencies in Yates' expert testimony on this issue should be excused." This court continues to be interested in this issue, since it seems likely to be dispositive on Yates' failure to warn claim.

At the January 29 hearing, this court will be particularly interested in hearing Yates' explanation why, given that it offered Carasquillo's expert testimony on other aspects of the minimum clearance issue, it did not offer such expert testimony with regard to its failure to warn claim. That is, if the other aspects of the minimum clearance issue were deemed complex enough to require expert testimony, then why should the failure to warn claim against Hoch be regarded any differently? Yates should also be prepared to explain why it was unnecessary for it to offer expert testimony regarding the industry standard of care for engineering firms similarly situated to Hoch. For example, it is not clear to this court why Yates could not have retained an engineer experienced in building precast concrete parts to testify that, based upon the information available to Hoch in this case, it should have noticed the deficiencies in AECOM's overall design and brought them to the attention of the general contractor.

Even assuming that *Garrett* applies in the context of a subcontractor's duty to warn of a contractor's mistake, that does not mean that *all* subcontractors have such a duty with regard to *all* other decision made by contractors. In the court's view, it is arguably necessary for a plaintiff to present expert testimony that a particular subcontractor called upon to perform particular tasks in a particular case would have had been in a position to notice specific mistakes made by the

12

project's architect and that, based on industry standards, he should have brought those mistakes to the general contractor's attention. True enough, a jury may be able to *understand* mere arguments by counsel, or statements by lay witnesses, regarding such matters as the proper space between floors, but that does not mean that a plaintiff is able to meet its burden of establishing duty and breach of duty under relevant industry standards based upon such non-expert testimony. Yates may well have persuasive answers to the above concerns, and this court is uncertain as to how it will resolve this issue. However, given that Yates could have offered expert testimony on this issue, and yet failed to do so, this court believes that it should offer an explanation for this decision at the hearing. This court trusts that it will do so.

Having noted the above concerns, this court emphasizes that, even if it concludes at the hearing that Yates should have offered expert testimony on its failure to warn claim, that does not necessarily mean that it will dismiss that claim before trial. Indeed, this court's prior ruling was that it would wait until all the evidence has been presented at trial before deciding, at the directed verdict stage, if Yates has met its burden of proof. This court believes that there are good reasons for adopting such a cautious approach, since it is difficult to know how the proof might develop at trial. For example, it seems at least possible that the non-expert proof at trial will make a compelling case that Hoch knew or should have known of the defects in AECOM's design but nevertheless chose not to notify the general contractor of those defects. That is merely one example of the sort of proof which might conceivably make it easier for Yates to meet its burden of proof on its failure to warn claim, and this court will not attempt to predict what other such evidence might be.

This court does feel safe in saying that, in a complex case of this nature, there is much

13

less chance that it will enter a directed verdict against a plaintiff who offers reliable expert testimony than against one who offers no such testimony. The parties have notified this court that they will be attempting to settle this case after the January 29 hearing, and, in evaluating the settlement value of Yates' failure to warn claim, it seems appropriate that they consider the fact that it is far from certain that it will even go to the jury. At the same time, while this court acknowledges that Yates' proof is far from strong on this issue, it will be incumbent upon Hoch to explain why this court should not wait until the evidence has been presented at trial before deciding whether Yates has met its burden of proof. Regardless of how this court eventually resolves these issues, it would be assisted by arguments at the hearing, and it trusts that both sides will provide such arguments.

### 3. Other issues

Although the above two issues are the only ones this court deems it necessary to discuss in this order, it will allow the parties to present any arguments at the hearing on other issues relevant to the upcoming trial. These issues include, but are not limited to, any additional arguments on the impact of the economic harm doctrine in this case, as well as regarding the effect of any settlements involving PSI upon the claims which have been assigned to Yates. With regard to the economic harm doctrine, this court remains of the view, expressed in its prior order, that Hoch is seeking to be held blameless for acts of professional negligence which it admits it made on the seismic standards issue and which appear to have resulted in exactly the sort of damages that one would anticipate. This court is unaware of any context in Mississippi

law whereby a professional such as an engineer, attorney or accountant has been granted such blanket immunity for admitted mistakes in its work on a project analogous to this one,[1] and, if Hoch is aware of any such authority, then it should submit it in its trial briefing.

In its prior briefing on this issue, Hoch conceded that the Fifth Circuit has held that the economic harm doctrine only applies in products liability cases, but it maintains that this is, in fact, a products liability case. It strikes this court that the only factor which even gives Hoch an argument in this regard is the fact that the precast concrete parts which it built do appear to bear a stronger superficial resemblance to a "product" than, say, a will prepared by an attorney or an auditing report prepared by an accountant. And yet the actual *work* which Hoch did in this case, and the actual *relationship* between Hoch and the other project members, does not appear to be materially different than that involved when an attorney prepares a will for a family or an accountant provides auditing services for a construction project. That being the case, granting Hoch broad immunity for its admitted negligence in this case, based upon the mere fortuity that the result of its work was concrete rather than paper, strikes this court as being arbitrary in the extreme. Once again, Hoch admits that it created a mess with regards to the seismic code issue, and to the extent that Yates can prove that it incurred loss in cleaning up that mess, then this court can discern no good public policy reason as to why it should not be allowed to recover for that loss. Hoch will have a chance to persuade this court otherwise at the hearing, however.

It is therefore ordered that Yates' motion *in limine* [201-1] is granted, and this court will

---

[1]In so stating, this court is referring to a project in which the professional is not, say, merely designing a product for use by the public at large, but, rather, is called upon to use his professional expertise to ensure that a specific product is built according to a particular project's specifications.

address the remaining issues raised in this order at the January 29, 2018 hearing.

SO ORDERED, this the 27th day of December, 2017.

/s/ Michael P. Mills
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI